IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
          vs.                     )     Criminal No. 04-89
                                  )     See Civil Action No. 08-1711
MARVIN CABBAGESTALK,              )
                                  )
          Defendant/petitioner.   )


MEMORANDUM OPINION

BLOCH, District J.

On December 17, 2008, Petitioner filed a pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody" in the above-captioned case (Doc. No. 69). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 73) and "Petitioner's Reply to Government's Response to Petitioner's § 2255 Motion" (Doc. No. 80), the Court denies Petitioner's motion for the reasons set forth below.

I.   **Background**

On September 29, 2004, Petitioner pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). There was no written plea agreement entered into between Petitioner and the Government. At that time, the Court ordered the Probation Officer to prepare a Presentence Investigation Report ("PIR") which would include, inter

1

<u>alia</u>, a calculation of Petitioner's sentencing range under the United States Sentencing Guidelines.

In calculating Petitioner's guideline sentencing range, the Probation Officer indicated, in the PIR, that Petitioner had fired the gun at issue at three persons at a residence, causing one of the witnesses "to dive for cover." In light of that conduct, the Probation Officer applied the four-level enhancement for using or possessing the firearm in connection with another felony offense, namely aggravated assault, pursuant to Section 2K2.1(b)(5) of the Guidelines. Petitioner's offense level, after application of the acceptance of responsibility reduction pursuant to Section 3E1.1, was 21, and his criminal history category was IV, resulting in a guideline sentencing range of 57-71 months.

Petitioner made no objections to his criminal history category of IV, but did object to the allegation in the PIR that he fired the gun and to the four-level enhancement pursuant to USSG 2K2.1(b)(5) under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). The Court, in its Tentative Findings and Rulings Regarding Disputed Facts or Factors, issued on December 30, 2004, agreed with the Probation Officer, and tentatively found Petitioner's offense level to be 21, his criminal history category to be IV, and his sentencing range to be 57 to 71 months. (Doc. No 32).

Petitioner was originally scheduled to be sentenced on January 6, 2005, but this hearing was subsequently rescheduled for January

26, 2005.  On January 12, 2005, the United States Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), a decision in which the Court held that the Sentencing Guidelines were merely advisory and that a sentencing court could, for good reason, sentence a defendant outside of the recommended guideline sentencing range.  On January 26, this Court proceeded to sentence Petitioner and, pursuant to Booker and 18 U.S.C. § 3553(a), varied from Petitioner's guideline range and sentenced him to a term of imprisonment of 120 months and a term of supervised release of 3 years.

Petitioner appealed his conviction and sentence.  On appeal, the Court of Appeals for the Third Circuit affirmed Petitioner's conviction but remanded for re-sentencing.  See United States v. Cabbagestalk, 184 Fed. Appx. 191 (3d Cir. 2006).  Following submission of Petitioner's Memorandum of Law in Aid of Resentencing, an order authorizing an investigator on Petitioner's behalf, and a second sentencing hearing, this Court re-imposed a sentence of 120 months to be followed by a term of supervised release of 3 years. (Doc. No. 57).  The Petitioner again appealed his sentence, and the Third Circuit affirmed.  See United States v. Cabbagestalk, 246 Fed. Appx. 109 (3d Cir. 2007).

On December 17, 2008, Petitioner, acting pro se, filed the present motion pursuant to 28 U.S.C. § 2255.  (Doc. No. 69).  On December 18, 2008, in accordance with United States v. Miller, 197

3

F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist.  With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. (Doc. No. 70).  On January 9, 2009, Petitioner confirmed that he wished to proceed with his Section 2255 motion as filed.  (Doc. No. 71).

The Court will address the claims raised in Petitioner's motion below.

## II.   **Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).  However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief."  Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

4

As stated, Petitioner brings his motion under Section 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence."   28 U.S.C. § 2255(a).   An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In his motion, Petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel.  For the reasons that follow, this Court rejects Petitioner's contentions.  Moreover, because the record in this case demonstrates that Petitioner is not entitled to relief under Section 2255, no evidentiary hearing is necessary.

A petitioner seeking relief under Section 2255 on the ground of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result – that is, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."   Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)

5

(citing Strickland v. Washington, 466 U.S. 668, 694 (1984)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential.    [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.    Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;  that is,  the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted).  "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Petitioner raises several separate grounds on which he alleges his trial counsel, Thomas Farrell, was constitutionally ineffective. Each will be addressed below.

### A.    Misrepresentation of Sentence the Court Would Impose

Petitioner first argues that his guilty plea was not voluntarily entered because his counsel misrepresented the sentence that the Court would impose in this case. Specifically, he alleges that his counsel erroneously advised him that, if he pled guilty

6

prior to a scheduled pretrial conference and hearing on pretrial motions, including a suppression motion, he would likely receive a sentence of 30 to 37 months' imprisonment.  Petitioner claims that this advice induced his guilty plea.  Petitioner bases his argument on a September 14, 2004 letter from his counsel,[1] in which, according to Petitioner, counsel advised him that if he pled guilty before his scheduled pretrial conference and suppression hearing, "there would not be a 4-level increase sought in [his] sentence for [him] having possessed a gun in connection with another crime." (Doc. No. 80 at 5).  However, Petitioner's argument is not only based on his misunderstanding of the September 14 letter, but also on the state of the law in Fall of 2004.

It is well-established that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary" as long as these assurances are nothing "more than predictions based on counsel's knowledge and experience." Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972). See also United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007); United States v. Michlin, 34 F.3d 896, 899 (9th Cir. 1994).  In order to show ineffectiveness, Petitioner must show that counsel did not attempt to learn the facts of the case and failed to make a good

[1] The Court notes that Petitioner himself has provided this letter to the Court as an attachment to his Reply, and he cites to this letter in support of his position and does not allege that counsel made any representations other than those set forth in the letter.

faith estimate of a likely sentence.  <u>See</u> <u>Bethel v. United States</u>, 458 F.3d 711, 717 (7th Cir. 2006); <u>United States v. Cieslowski</u>, 410 F.3d 353, 358-59 (7th Cir. 2005).  The record here is clear that counsel was aware of the facts relating to sentencing, including the fact that the offense level might be subject to an increase based on the Government's contention that Petitioner possessed and/or used the firearm at issue in connection with another felony offense.

Contrary to Petitioner's characterization of the September 14 letter, his counsel never represented as an absolute that the four-level enhancement for possessing a firearm in connection with another felony offense would not apply in this case.  Instead, he acknowledged that it might apply, while providing his opinion that it would not.  Specifically, counsel advised Petitioner in that letter that if Petitioner entered a plea of guilty before the scheduled suppression hearing, the Government would agree not to amend the indictment to add allegations that Petitioner possessed and/or used the firearm in connection with another felony offense pursuant to Section 2K2.1(b)(5).  However, counsel expressly indicated that the Government would not agree not to seek the enhancement.

Nonetheless, based on counsel's understanding of the United States Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), he advised Petitioner that the Government's agreement not to amend the indictment to allege the enhancement may be as good

as an agreement not to seek the enhancement because, under his reading of Blakely, if the enhancement was not charged in the indictment, it could not be applied against Petitioner. Accordingly, counsel advised that Petitioner's likely sentence if he pled guilty, based on the absence of the four-level 2K2.1(b)(5) enhancement, would be 30-37 months.[2]  Counsel pointed out that this would have been substantially better than the range of 63-78 months that would apply if he went to trial, which assumed the 2K2.1(b)(5) enhancement and no Section 3E1.1 reduction.[3]

At the time Petitioner entered his plea of guilty, this was a reasonable interpretation of the law.  In Blakely, the Supreme Court found that the rule expressed in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that is, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

---

[2]     The actual range, assuming Section 2K2.1(b)(5) did not apply, would have been 36-47 months based on an offense level of 17 and a criminal history category of IV.  Counsel was mistaken about the 30 to 37 month guideline range due to his mistaken belief that Petitioner's criminal history level was III.    The Petitioner's actual criminal history level of IV was determined first by the Probation Officer and ultimately by this Court after the guilty plea was entered.  As stated above, Petitioner did not object to the finding regarding his criminal history.  Petitioner does not allege specifically that counsel's estimate of his criminal history prior to the PIR was unreasonable, nor does the record present any basis for establishing that this estimate was not reasonable.  In any event, as discussed below, since the Court did not sentence Petitioner pursuant to the guideline sentencing range, this minor error in calculation would not have prejudiced Petitioner.
[3]     Again, based on the mistake as to Petitioner's criminal history category, this calculation is inaccurate.  The actual range would have been 77-96 months.

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," precluded the sentencing judge from issuing a sentence that could not be imposed solely on the basis of the facts admitted in the guilty plea.  In so doing, the Supreme Court clarified that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely, 542 U.S. at 303 (citing Ring v. Arizona, 536 U.S. 584, 602 (2002)).  "In other words," the Court held, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."  Id. at 303-04 (emphasis in original).

Rejecting the State of Washington's position that the relevant statutory maximum was the ten-year limitation applicable to Class B felonies, the Court held that Blakely's Sixth Amendment rights were violated when the sentencing judge imposed the exceptional 90-month sentence because that sentence could not have been imposed solely on the basis of the facts admitted by the defendant.  Thus, Blakely holds that a defendant's Sixth Amendment rights are violated where "the jury's verdict alone [or the facts admitted by the defendant] do[] not authorize the sentence."  Id. at 305.

Based on this case law, as stated, counsel advised that, since it was not alleged in the indictment, found by a jury beyond a

reasonable doubt, or admitted by Petitioner that he had possessed the firearm in connection with another felony offense, his sentence could not be enhanced on that basis.    Because counsel had been informed that the Government would amend the indictment to seek this enhancement if Petitioner went ahead with the suppression hearing and proceeded to trial, which could have subjected Petitioner to the enhancement, he advised Petitioner to plead guilty.[4]

Had Petitioner been sentenced prior to January 12, 2005, counsel's advice may well have been correct.    However, after Petitioner pled guilty, but before sentencing, the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005).  In that case, the Court held, much like it had done in Blakely, that the mandatory application of the Sentencing Guidelines was unconstitutional under the Sixth Amendment.  The Court, though, went far beyond Blakely in imposing a remedy.  In the remedial part of the decision, the Court severed and excised the statutes making the Guidelines mandatory, thereby rendering the Guidelines merely advisory and eliminating any Sixth Amendment issues.  Further, the Court rejected the potential remedy of requiring sentencing factors to be charged in indictments as unfeasible.  See id. at 254-55.

Counsel's advice, which was given before the Booker decision, was reasonable at the time rendered under Blakely.    Pursuant to

---

[4]    At no point did he discuss the possibility of a sentence outside of the guideline range.

Blakely, it reasonably appeared that sentencing enhancements would have to be charged in the indictment and proved to a jury beyond a reasonable doubt.  Moreover, there was no reason to believe that the Guidelines were anything other than mandatory, as they had been. Although Blakely, of course, did not address the federal Sentencing Guidelines, but rather a state sentencing scheme,[5] there were obviously potential implications for the federal Guidelines, which were similar to the Washington state sentencing system.  It was not the least bit unreasonable to believe that the rule of law set forth in Blakely would apply to the United States Sentencing Guidelines.

Indeed, counsel was very clear in his September 14 letter to Petitioner that the state of the law was not entirely clear.  He stated in the letter that, in Blakely, "the Supreme Court said it was not deciding whether the same rules apply to the U.S. Sentencing Guidelines."  He acknowledged that "we must make a decision based on predictions as to what the Supreme Court will do."  He then offered:

> Most lawyers and judges, including me, believe that the Supreme Court will apply the same rules to the U.S. Sentencing Guidelines, meaning that the government will not be able to add the 4 points against you because they did not charge it in the indictment and you did not have a jury trial on it (or, if they did and Judge Bloch went along with it, we'd have a winning appeal).

---

[5]     The Supreme Court, in fact, expressed no opinion as to the Sentencing Guidelines.  See 542 U.S. at 305 n. 9.

Accordingly, counsel offered his reasonable opinion as to how the law would apply while acknowledging to Petitioner that the law was somewhat in a state of flux prior to his decision to plead guilty.

Booker, however, did not apply Blakely in the way counsel, and many others, had expected. Instead of requiring sentencing enhancements to be charged and proved to the jury, the Supreme Court, instead, rendered the Guidelines merely advisory, eliminating any Sixth Amendment concerns. The different approach of the remedial decision had two effects on Petitioner's sentencing. First, the Section 2K2.1(b)(5) enhancement could be applied regardless of whether it had been charged in the indictment, proved to a jury beyond a reasonable doubt, or admitted by Petitioner. More importantly, since the Guidelines were no longer mandatory, the Court was no longer bound to sentence Petitioner within the recommended guideline sentencing range.

Thus, even though counsel was correct in advising that the Sixth Amendment issues in Blakely would be applied to the federal Sentencing Guidelines, he did not anticipate the remedial portion of the Booker opinion. He did not, therefore, advise Petitioner that the sentencing range recommended by the Guidelines would be merely advisory to a sentencing court. However, there was no way to know, based on Blakely, that this would be the case.[6] Nothing in Blakely

---

[6]    The Court notes that both upward and downward departures were available under the Guidelines even prior to Booker. However, the
(continued...)

would necessarily lead to the assumption that the Guidelines would be preserved as merely advisory. To hold that counsel had a duty to anticipate the somewhat unusual remedial holding in Booker would create an unreasonable standard for any attorney. See United States v. Gonzalez-Huerta, 403 F.3d 727, 750 (10th Cir. 2005) (Briscoe, J., concurring in part and dissenting in part) ("It is safe to say that no one . . . could have predicted the absolute sea-change in federal sentencing that would ultimately be wrought by the Supreme Court in its Booker remedial holding.").

There is no duty of defense counsel to predict or anticipate changes in the law. Sistrunk, 96 F.3d at 670-71; United States v. Davies, 394 F.3d 182, 189-91 (3d Cir. 2005). Counsel's failure here to anticipate the "sea-change" brought on by Booker, even with the benefit of the Blakely decision, was not unreasonable and did not render Petitioner's decision to plead guilty involuntary. See United States v. Golden, 255 Fed. Appx. 319 (10th Cir. 2007) (holding that counsel's "failure to predict Booker's extension of Blakely" was not deficient); United States v. Fields, 565 F.3d 290 (5th Cir. 2009).

---

6(...continued)
Court's sentence in this case was not a departure under the Guidelines, but was more accurately a variance pursuant to Booker and Section 3553(a). Petitioner does not identify any grounds for upward departures that existed prior to Booker about which he should have been advised, and the Court cannot identify any that counsel unreasonably failed to discuss in his letter to Petitioner.

Accordingly, there is no basis to Petitioner's assertion that his counsel was constitutionally deficient in advising him as to the sentence he would likely receive if he pled guilty in this case.

Furthermore, even if Petitioner could establish deficient performance, he cannot establish prejudice. In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court applied the Strickland standard in the context of challenges to guilty pleas that are based on ineffective assistance of counsel. The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. The petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. See also United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008). Moreover, it is well-established that "defense counsel's conjectures to his client about sentencing are irrelevant where . . . [an] in-court guilty plea colloquy clearly establish[es] the defendant's maximum potential exposure and the sentencing court's discretion." United States v. Shedrick, 493 F.3d 292 (3d Cir. 2007). See also United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003); United States v. Macon, 91 Fed. Appx. 239 (3d Cir. 2004).

During the plea colloquy, this Court advised Petitioner of his potential maximum penalty of 10 years' imprisonment and a term of supervised release of 3 years. (Doc. No. 43). Petitioner also

stated during the plea colloquy that there was no plea agreement
between himself and the Government, and that he understood that he
would still be bound by his plea of guilty even if the sentence
imposed was more severe than he expected.  (Id. at 9-10, 12).  The
Court further asked Petitioner if "anyone [had] made any prediction
or promise to you as to what your actual sentence will be other than
what I told you about a maximum sentence? Do you understand that
question?"  When Petitioner indicated "No," the Court instructed him
to discuss it with his attorney.  The Petitioner then indicated that
he understood.  (Id. at 12).  The Court then asked the Petitioner,
"Has anything I said to you here today, other than what I told you
about a maximum sentence, suggested to you what your actual sentence
will be?", to which Petitioner responded, "No, Your Honor."  (Id. at
12-13).  Moreover, the Court asked Petitioner if he understood that
"the judge has authority, in some circumstances, to impose a
sentence that is more severe or less severe than that called for by
the guidelines?"  Petitioner responded, "Yes, Your Honor."  (Id. at
9).

     Thus, the plea colloquy rebuts Petitioner's claim that he was
misled as to what his potential sentence would be.  He was well-
aware that he could receive a sentence of imprisonment of up to 10
years and that he may not receive a guideline sentence.  The
colloquy, therefore, cured any deficiency that may have occurred in

the course of counsel advising Petitioner of a likely sentence if he pled guilty.

Moreover, even though Petitioner now claims that he "is entitled to hav[e] his guilty plea set aside" and to have "this case set for trial," (Doc. No. 80 at 6) it is not at all clear that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial at the time. Booker was decided approximately two weeks prior to his sentencing, so there was time for Petitioner to consider the impact of the decision. There is no indication that Petitioner, at that time, indicated any desire to withdraw his guilty plea on the basis of Booker. Indeed, his counsel argued for a sentence lower than that suggested by the Guidelines based on Booker at the original sentencing hearing. (Doc. No. 44). Petitioner has not indicated that he had a defense of any kind to the charge in the indictment and, based on Booker, he could not have avoided the issue of the Court determining whether he fired the gun by going to trial. The Court is not convinced by Petitioner's after-the-fact claim that being "properly" advised would have caused him to go to trial.

Accordingly, Petitioner can establish neither deficient performance nor prejudice based on counsel's advice regarding his potential sentence.

**B.    Failure to Enforce Plea Agreement**

Petitioner next argues that his counsel was ineffective in failing to enforce an alleged plea agreement that the Government allegedly breached.   Specifically, Petitioner claims that an agreement existed between himself and the Government which included an agreement that the Government would not seek the four-level enhancement pursuant to Section 2K2.1(b)(5) if Petitioner would plead guilty prior to the suppression hearing, as evidenced by the September 14, 2004 letter.  He claims that he agreed to plead guilty "in accord with the terms set by the Government."  (Doc. No. 69 at 9).  Petitioner claims that the Government, at sentencing, did seek the four-level enhancement in violation of this agreement and that his counsel was ineffective when he failed to seek enforcement of the plea agreement and failed to seek to withdraw Petitioner's guilty plea following the breach of the alleged agreement.   The court finds no merit in any of these claims.

First, there was no plea agreement entered into between the Government and Petitioner.  During the course of the plea colloquy, this Court informed Petitioner: "You should understand that this Court may or may not approve any plea agreement which you might enter into.  You have a duty to disclose any such agreement.  If you don't disclose the agreement now, you may not later assert the existence of any plea negotiation or plea agreement.  Has there been

18

a plea agreement entered into between you and your attorney and the attorney for the Government?"   Petitioner responded, "No, Sir." (Doc. No. 43 at 12).  His attempt to now enforce a plea agreement he denied at the time of his plea is without merit, and counsel cannot be considered to have been ineffective for failing to enforce a plea agreement that, by admission of Petitioner, did not exist.

Further, even assuming that the September 14 letter did establish some kind of enforceable plea agreement between Petitioner and the Government, that agreement was not as characterized by Petitioner. As discussed above, the Government merely agreed not to amend the indictment to charge Petitioner with possessing the firearm in connection with another felony.   Counsel's letter specifically states that the Government "will not agree not to seek the 4 points."   (Emphasis in original).   The Government did not amend the indictment, and therefore could not have breached such an agreement.  The Government did not agree not to seek the four-level enhancement, and did not, therefore, breach any agreement by doing so.

Moreover, even if Petitioner could demonstrate that his counsel was constitutionally deficient in failing to enforce an agreement similar to what he alleges, he could not demonstrate prejudice. First, the Court can apply the four-level 2K2.1(b)(5) enhancement regardless of whether the Government "seeks" it or not.   More

importantly, the Court varied from the Guidelines and did not follow the advisory range, so it is ultimately not relevant whether the enhancement applied.    Contrary to Petitioner's conclusory assertions, the Court was not unduly influenced by the Government's seeking an enhancement pursuant to Section 2K2.1(b)(5) in fashioning its sentence pursuant to Section 3553(a).

Accordingly, the Court finds that there was no plea agreement in this case and that counsel was not ineffective in failing to enforce any such agreement.

### C. **Failure to Protect Petitioner's Speedy Trial Act Rights**

Finally, Petitioner argues that counsel was ineffective in failing to move to dismiss the indictment when Petitioner's rights pursuant to the Speedy Trial Act, 18 U.S.C. § 3161-3164, were violated. Specifically, Petitioner claims that he pled guilty less than 30 days after his initial appearance, in violation of 18 U.S.C. §3161(c)(2), and that counsel failed to move to dismiss the indictment on that basis. He further alleges that some of the time between his initial appearance on June 30, 2004 and his plea on September 29, 2004 was excludable under 18 U.S.C. § 3161(h). His claims are frivolous.

First, Petitioner pled guilty and did not go to trial. Section 3161(c)(2) states: "Unless defendant consents in writing to the

contrary, the *trial* shall not commence less than thirty days from the date on which the defendant first appears through counsel . . ." (Emphasis added).  Therefore, this section expressly applies to when a *trial* can commence, not when a defendant can change his plea from one of not guilty to one of guilty.    Additionally, Petitioner's plea occurred well over 30 days after he made his initial appearance, and his claim that, during this period, there are excludable time periods under the Speedy Trial Act is without merit, as the exclusions set forth in Section 3161(h) do not apply to the computation of time under Section 3161(c)(2).  See United States v. Marroquin, 885 F.2d 1240 (5th Cir. 1989); United States v. Mastrangelo, 733 F.2d 793 (11th Cir. 1984); United States v. Wooten, 688 F.2d 941 (4th Cir. 1982).  Accordingly, there is no basis to Petitioner's position.

## III. **Conclusion**

For all of the above-stated reasons, Petitioner's motion is denied in its entirety.   Further, this Court will not issue a certificate of appealability in this case.   A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  For the reasons set forth above, Petitioner has not made a substantial showing of the

21

denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

s/Alan N. Bloch
United States District Judge

Dated:    January 4, 2010

ecf:      Counsel of record

cc:       Marvin Cabbagestalk
          #08158-068
          FCI Ray Brook
          P.O. Box 9006
          Ray Brook, NY 12977